[No. 8099. Department Two. — March 26, 1886.]

HENRY M. HALE ET AL., EXECUTORS, ETC., OF THEO-
DORE L. SCHELL, DECEASED, APPELLANTS, v.
STEPHEN AKERS ET AL., RESPONDENTS.

MEXICAN GRANT — DECREE OF CONFIRMATION — CONCLUSIVENESS AS TO THIRD
PARTIES. — Under the act of Congress of March 3, 1851, for the ascer-
tainment and settlement of private land grants in California, the final
decree of the board of land commissioners, or of the United States Dis-
trict or Supreme Court, confirming a Mexican grant, or any patent issued
therefor, is conclusive only between the United States and the claimant,
and does not affect the interests of third persons whose title accrued be-
fore the duty of the government and its rights under the treaty with
Mexico attached.

ID. — OVERLAPPING PATENTS — GRANT BY SPECIFIC BOUNDARIES — FLOAT-
ING GRANT — PRIORITY OF PATENT. — Where two patents from the
United States government, founded upon previous Mexican grants, cover

the same premises, in determining the question of priority, a grant of the land by specific boundaries, or having such descriptive features as to render its identification a matter of absolute certainty, gives a better right to the premises than a floating grant, although the latter is first surveyed and patented.

ID. — SURVEY MUST CONFORM TO DECREE — LAND ERRONEOUSLY INCLUDED IN — TITLE TO — PUEBLO. — Where a claim to land, founded upon a Mexican grant, has been confirmed by a decree of the United States District Court, under the act of March 3, 1851, and the decree fixes the boundaries of the claim, the survey must conform to the decree in all respects. If it does not, but includes lands not covered by the decree, and belonging to a pueblo which was established prior to the date of the grant, a patent issued to the pueblo upon a confirmation of its original concession carries a better right to the lands so erroneously included in the survey, although the patent founded on the grant was prior in date.

ID. — AGREEMENT FOR COMPROMISE CONSTRUED. — A certain agreement entered into by the defendant and plaintiff's testator for the compromise and adjustment of their conflicting claims to the property in question examined, and *held* conclusive of the action.

APPEAL from a judgment of the Superior Court of Sonoma County.

The facts are stated in the opinion.

*William D. Bliss*, for Appellants.

*Rutledge & McConnell*, for Respondents.

BELCHER, C. C. — This is an action to recover possession of about fifteen acres of land in Sonoma County. Both parties claim title in fee. The plaintiffs deraign their title from Jacob P. Leese, to whom a Mexican grant of five and a half leagues was confirmed, and in August, 1859, patented by the United States. The defendant, Stephen Akers, deraigns his title from the city of Sonoma, to which a patent was issued by the United States in March, 1880, for certain lands confirmed to it as pueblo lands. Both patents cover the land in controversy, and the question for decision is, Which party show the better right to it?

The facts as found by the court below are as follows: —

In October, 1841, the governor of California made a

grant to Jacob P. Leese of the place called Huichica, in the neighborhood of Sonoma, containing two square leagues, and having for its western boundary the Arroyo Seco. In July, 1844, the governor made a second grant to Leese of three and a half leagues of the land called Huichica, and bounded "on the west by Estero de Sonoma, as far as the Trancas, taking the direction of the Arroyo Seco as far as the Little Hills of Huichica."

In April, 1852, Leese presented to the board of land commissioners a claim for confirmation of his title to the whole Huichica tract of five and a half leagues, and his claim was confirmed by the board in April, 1853, and by the United States District Court in 1856. The appeal to the Supreme Court was dismissed in December, 1856. The decree of confirmation gave to Leese the land known by the name of "Huichica," containing five and one half square leagues, and bounded it "on the south by the marshy land adjoining the bay of San Francisco, and on the west by the estero of Sonoma, as far as the Trancas, taking the direction (el rumbo direction or course) of the Arroyo Seco." Under this decree, a deputy surveyor made a survey of the Huichica in December, 1858, and his survey was approved by the United States surveyor-general for the state, on June 4, 1859. No notice was given of the survey or of its approval, and neither the city of Sonoma nor any officer thereof, nor the defendant, had any notice of the proceeding relative to its approval. In accordance with this survey a patent for the Huichica rancho was issued by the United States to Leese, dated August 3, 1859. It was in the usual form of patents issued for confirmed Mexican grants, and recited the second grant, the confirmation, and the survey. The western boundary, as shown on the plat in the patent, is the Sonoma Creek, from a post marked L at the Lower Landing as far as a post marked L at the Trancas; and thence a straight line running north 37 degrees east 156 chains, to a post marked L on the Arroyo Seco

at the Huichica hills. This last line is known as the "Trancas line."

In June, 1835, the governor of California instructed General Vallejo, director of colonization, to establish the pueblo of Sonoma; and in that year Vallejo established the pueblo, and made a survey thereof, with the following boundaries: "On the east the Arroyo Seco, from the vineyard of Salvador Vallejo to the salt marsh on the bay; thence along the salt marsh westerly to Sonoma creek; thence up that creek to the Agua Caliente Creek; thence easterly to the foothills north of the city to the place of beginning." This tract General Vallejo laid out and platted into lots and blocks, and in the year 1835 established families on the same, occupying the tract along the Arroyo Seco, down to the point where it entered the salt marsh. He also made a report of all his proceedings to the governor, and they were duly approved.

In May, 1852, the mayor and common council of the city of Sonoma presented to the board of commissioners their claim, as successors of the pueblo, for all the land of the pueblo of Sonoma, as established by Vallejo; and their claim was confirmed by the board in January, 1856. An appeal was taken to the District Court, and under the provisions of an act of Congress, passed July 1, 1864, the case was transferred to the Circuit Court, where the claim was confirmed on the second day of November, 1864. The decree of confirmation fixed the Arroyo Seco as the eastern boundary of the pueblo.

In September, 1868, a survey of the land, so confirmed, was made by the surveyor-general, and in August, 1872, was reported to the land department for approval. Due notice of this survey was given and published, as required by the act of Congress of July 1, 1864, and the matter of the conflict between this survey and the survey of the Huichica grant was heard before the commissioner of the general land-office in March, 1876. That officer adjudged and determined that "a direct line run-

ning from the point marked 'Trancas,' on Sonoma Creek, to the point where the Arroyo Seco enters the salt marsh, and thence following the direction of the Arroyo Seco to the Little Huichica Hills, should constitute the south-easterly boundary of the pueblo of Sonoma," and directed the surveyor-general to amend his survey accordingly. An amended survey was made as required, and due notice thereof given. The amended survey was reported to the general land-office for approval, and upon a hearing had before the commissioner in December, 1878, that officer approved the survey and fixed the Arroyo Seco as the boundary between the pueblo of Sonoma and the Huichica grant. No appeal was taken from this decision, and the same became final. A patent for the pueblo lands was issued by the United States to the mayor and common council of the city of Sonoma, in accordance with the decrees of confirmation and survey, dated March 31, 1880; and this patent covered 423 acres of land embraced in the Huichica patent, of which the fifteen acres in controversy are a part.

In 1851 the defendant, Stephen Akers, entered into the possession of the land sued for under a contract with the city of Sonoma for its purchase, and he has remained in possession, cultivating and improving it, ever since. In May, 1858, the city conveyed to him this land and enough more to make 111 acres,—it all being within the city limits as surveyed and patented.

In January, 1859, the grantee of Leese conveyed to Theodore L. Schell, the plaintiffs' testator, 470 acres of land, parcel of the Huichica grant as surveyed, and covering the 111 acres conveyed as aforesaid to Akers.

In September, 1860, Schell commenced an action against Akers to recover from him the possession of all of the 111 acres, and while the action was pending the parties to it, on the eleventh day of October following, entered into a written agreement, which was signed and acknowledged by them and recorded. By this agree-

ment Akers released to Schell the east half of the 111-acre tract, which was described by metes and bounds, and the agreement then proceeded as follows:—

" The said Schell hereby covenants and agrees that in the event the city of Sonoma establishes her claim to any part or portion of the above released tract of land, that he will deliver the possession of the same, or such portions thereof as may be so established, together with a yearly rent from this date, of five dollars per acre for the land so to be delivered. And the said Akers hereby covenants and agrees, that in the event of the city of Sonoma not being able to establish her claim beyond the present line of the Huichica patent, that he will deliver possession to the said Schell of all or such portion of the remainder of said above-described tract of land, as may be within the line of said Huichica patent, and will pay a yearly rent for the same, at the rate of five dollars per acre to the said Schell."

The action was then dismissed, and a fence was built by the parties, extending northerly across the land and dividing it into two fields of nearly equal size. Akers surrendered to Schell all that portion lying east of the fence and retained possession of all that portion lying west of it.

The land in controversy here is a part of the land which Akers so retained in his possession.

Upon the findings, the court rendered judgment in favor of the defendants. The plaintiffs appealed, and the case is brought here on the judgment roll.

There are two sufficient answers to the claims made by the appellants:—

1. It was expressly provided by the act of Congress passed March 3, 1851, entitled, "An act to ascertain and settle the private land claims in the state of California," that the final decrees of the board of commissioners, or of the District or Supreme Court, or any patent to be issued under the act, should be conclusive only between

the United States and the claimants, and should not affect interests of third persons. (*Rodrigues* v. *United States*, 1 Wall. 588.)          •

It has been held by this court that the "third persons," against whose interests the action of the government and patent are not conclusive, are those whose title accrued before the duty of the govenment, and its rights under the treaty attached. (*Teschmacher* v. *Thompson*, 18 Cal. 27.)

Where two patents cover the premises in controversy, "the main question in the case, as in all cases where patents founded upon previously existing concessions overlap, is which of the two original concessions carried the better right to the premises." This was said in *Henshaw* v. *Bissell*, 18 Wall. 355; and in that case, there being two patents covering the same land, it was held that in determining such a controversy a grant of land identified by specific boundaries, or having such descriptive features as to render its identification a matter of absolute certainty, gives a better right to the premises than a floating grant, although such floating grant be first surveyed and patented.

Here it appears that the pueblo of Sonoma was established by the direction and with the approval of the governor of California in 1835. Its boundaries were surveyed and fixed. The tract was laid out in lots and blocks, and families were established upon those lots and blocks along the Arroyo Seco, which was its eastern line, down to the salt marsh.

"By the laws of Mexico, in force at the date of the acquisition of the country, pueblos or towns were entitled, for their benefit and the benefit of their inhabitants, to the use of lands constituting the site of such pueblos and towns, and of adjoining lands, within certain prescribed limits. This right appears to have been common to the cities and towns of Spain from an early period of her history, and was recognized in the laws and ordinances

for the settlement and government of her colonies on this continent. Those laws and ordinances provided for the assignment to the pueblos or towns, when once established and officially recognized, for their use and the use of their inhabitants, of four square leagues of land." (*Townsend* v. *Greeley*, 5 Wall. 336.) " And when pueblos were established they became invested, even without any formal assignment, with a certain title to the pueblo lands. This title was recognized by the act of March 3, 1851, as in the nature of a grant, and it has ever since been upheld and protected by the decisions of this court and of the Supreme Court of the United States." (*Hart* v. *Burnett*, 15 Cal. 530; *Grisar* v. *McDowell*, 6 Wall. 363.)

In the first grant to Leese the Arroyo Seco is expressly named as its western boundary. In the second grant and in the decree of confirmation, the western boundary is the Estero de Sonoma as far as the Trancas, thence taking the direction of the Arroyo Seco.

It has been held, when a land claim had been confirmed by a decree of the District Court, under the act of March 3, 1851, and the decree fixed the boundaries of the claim and remained unreversed, that the survey must conform to the decree in all respects. (*Fossat's Case*, 2 Wall. 649.)

What was meant by the words "taking the direction of the Arroyo Seco"? It seems to us, as it did to the commissioner of the general land-office, when the matter of the conflict was before him, that the line was to run from the Trancas to the nearest point on the Arroyo Seco, and thence up that creek or gulch. If this be so, then it is clear that the line as run by the surveyor did not conform to the decree, but took in lands not covered by it. It must follow that to the lands so taken in, the original concession to the pueblo and the patent issued upon confirmation thereof carried the better right.

2. When Schell and Akers executed their written

agreement in October, 1860, the Huichica patent had been issued to Leese, and Schell had his deed. The Sonoma claim had been confirmed by the commissioners, and took in the land lying between the Trancas line and the Arroyo Seco. The city was asserting a right to that land, and the case was pending before the courts.

Akers had a deed to 111 acres of the land and was in possession of it. Under these circumstances the parties compromised the action which had been commenced, by dividing the 111 acres about equally between them. Akers released and surrendered to Schell the eastern half and retained the western half. In consideration of this Schell agreed, "in the event the city of Sonoma establishes her claim to any part or portion" of the land released, to deliver back to Akers such part or portion, and to pay a yearly rent of five dollars per acre for the same while he might hold it. And Akers agreed, in the event the city should not be able to establish her claim beyond the line of the Huichica patent, to deliver to Schell so much of the land as he retained within that line, and to pay to him a like rent of five dollars per acre.

It is clear from this, we think, that the only establishment of the Sonoma claim which the parties contemplated was such as would result from the action of the courts upon it, and the issuing of a patent by the government in pursuance of their decrees. The parties evidently thought that if the city should finally succeed in establishing its claim and receive a patent for any of the land within the lines of the Huichica patent it would have the better title to the land. They could, therefore, avoid litigation and expense, and safely await the issue of the city's contest. As we have seen, they rightly interpreted the law, and so long as Schell lived he acquiesced in the arrangement. After his death his executors thought it their duty to raise the question again, and this action was commenced.

In our opinion the agreement was intended to be, and was, binding upon the parties and decisive of their rights when it was executed, and it remains so still.

The judgment should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.

Hearing in Bank denied.