RINCON WATER & POWER CO. v. ANAHEIM UNION WATER CO. et al.

(Circuit Court, S. D. California, S. D. April 3, 1902.)

No. 981.

1. **WATERS—SUIT TO ENJOIN EXCLUSIVE APPROPRIATION—SUFFICIENCY OF BILL.**
   A bill by a riparian owner on a stream, against persons who, by virtue of alleged prior appropriation, claim the right to use all the waters of the stream, to enjoin such use, need not make all other riparian owners parties, nor show the quantity of water to which complainant is entitled, but is sufficient if it alleges that he owns lands irrigable from the stream.

2. **SAME—REQUISITES TO EXCLUSIVE APPROPRIATION—TITLE TO SUSTAIN SUIT FOR DIVERSION.**
   The posting of a notice by a person desiring to appropriate water from a stream, as required by Civ. Code Cal. § 1415, does not in itself constitute an appropriation, which becomes perfect only when the necessary works have been completed in accordance with the requirements of the succeeding sections, and the water thereby diverted from the stream and conducted to the place of intended use, when the claimant's right relates back to the time of the posting of the notice. Until the appropriation has been so perfected, the claimant acquires no exclusive

right to the use of the water, and cannot maintain any suit, either at law or in equity, for its diversion by others, or to determine adverse claims.

**3. RES JUDICATA—CONCLUSIVENESS OF JUDGMENT—DISMISSAL BY CONSENT.**
Under Code Civ. Proc. Cal. § 581, which provides that "an action may be dismissed or a judgment of nonsuit entered * * * by either party upon the written consent of the other," and section 582, providing that "in every case, other than those mentioned in the last section, judgment must be rendered on the merits," a judgment of dismissal which recites that it was entered on motion of defendant's attorneys, pursuant to a written stipulation between the parties, is not a judgment on the merits, which concludes the rights of the parties.[1]

**4. SAME—EFFECT OF STIPULATION FOR PAYMENT OF COSTS.**
The fact that a stipulation for the dismissal of a cause provided that each party should pay his own costs does not make the judgment entered thereon one upon the merits, which will conclude the parties.

**5. WATERS—SUIT TO DETERMINE RIGHTS—MULTIFARIOUSNESS OF BILL.**
A bill to enjoin defendants from diverting all of the waters of a stream under a claim of prior appropriation is not multifarious because complainant claims portions of the water in different rights, where it is alleged that all of such claims and rights are alike affected by the rights and claims of right of defendants, and the question in controversy is the extent of such rights.

In Equity. On exceptions and demurrer to bill.

Charles Silent and Works & Lee, for complainant.
Keech & Parker, A. W. Hutton, Richard Melrose, and John D. Pope, for defendants.

WELBORN, District Judge. The bill alleges, in effect, among other things, that complainant is the owner of certain lands therein described, through which flows the Santa Ana river; that of said lands about 135 acres are irrigable from said river; that in and through said lands are percolating waters, to the amount of 2,500 miners' inches, measured under a 4-inch pressure; that complainant, prior to the filing of said bill, and on the dates therein mentioned, posted on said lands notices and claims of intended diversions of the waters of said stream, aggregating 30,000 inches, measured under a 4-inch pressure, and caused said notices to be recorded as provided by law, and immediately thereafter entered upon the said stream and took possession thereof, and commenced, and has ever since continuously and uninterruptedly prosecuted, and is now prosecuting, the work of developing, appropriating, and diverting the waters of said stream in pursuance of said claims and notices, and in accordance therewith, and with the laws of said state relating to the appropriation of water; that complainant has a right to the use of 750 inches of water, measured under a 4-inch pressure, diverted from said river by means of a certain ditch, known as the "Yorba Ditch," and that defendants are claiming an exclusive right, as prior appropriators, to the use of all of the waters of said river; and that said adverse claim is unfounded and unlawful. There are also allegations of notices and claims of diversion by complainant's grantor, but it is unnecessary to particularize them, since they involve the same question as the notices and

[1] See Judgment, vol. 30, Cent. Dig. § 1033.

claims which complainant itself posted. The bill further alleges, as a former adjudication, the dismissal of an action in the superior court of Orange county, state of California, wherein the defendants in the case at bar were plaintiffs, and divers other persons, including the grantor of complainant herein, were defendants, pursuant to the following stipulation:

(Title of court and cause.)

"It is hereby stipulated and agreed between the above-named plaintiffs and the defendants A. H. Naftzger, Rincon Town & Land Company, J. R. Newberry, Rincon Water Company, R. Willey, Albert Kleinschmidt, and Ellen Kleinschmidt that the above-entitled action be dismissed, and each of the parties hereby agrees to pay their own costs of the action, and such dismissal may be had and motion of dismissal made by any of the said parties without notice to the other parties to this stipulation, and that the party or parties so appearing and applying to the court for such dismissal may have the order of dismissal made and entered for all the parties.

"Dated this September 22, 1900.

"Chapman & Hendrick,
"A. W. Hutton,
"Richard Melrose & E. E. Keech,
"Collier & Evans and Chas. S. McKelvey,

"Attorneys for the Defendant A. H. Naftzger, Rincon Town & Land Company, R. Willey, Albert Kleinschmidt, and Ellen Kleinschmidt.
"[Indorsed] Filed Sept. 22, 1900."

The judgment of dismissal was as follows:

(Title of court and cause.)

"It appearing to the satisfaction of this court that the plaintiffs and the defendants A. H. Naftzger, Rincon Town & Land Company, J. R. Newberry, Rincon Water Company, R. Willey, Albert Kleinschmidt, and Ellen Kleinschmidt have entered into, made, and filed a stipulation by which said action may be dismissed as to all of said above-named parties, upon the motion of any of them, without notice to the other, and that each party pay his own costs of the action, and Charles Silent, Esq.. now appearing on behalf of said defendants and on behalf of Messrs. Collier & Evans and Charles S. McKelvey, Esq., the attorneys of record who signed said stipulation on their behalf, and moved the court that said action, as now pending between said plaintiffs and said above-named defendants, be now dismissed, each party to pay his own costs, which motion was granted, and said action, as between said plaintiffs and said defendants, was accordingly dismissed by the court, and it was ordered that judgment of dismissal be entered in accordance with the order of said court: Wherefore, by reason of the law and the premises aforesaid, it is now ordered and adjudged that said action, as between said plaintiffs and defendants A. H. Naftzger, Rincon Town & Land Company, J. R. Newberry, Rincon Water Company, R. Willey, Albert Kleinschmidt, and Ellen Kleinschmidt, be, and the same is hereby, dismissed, each party to pay its own costs of suit, and that neither party recover any costs from the other.                                                      Waldo M. York,

"Judge Superior Court.

"Dated this September 22, 1900."

The bill prays:

"That it may be determined and decreed by the court: (1) That the complainant is entitled to divert and appropriate the waters of the said Santa Ana river to the extent of thirty thousand miners' inches, measured under a four-inch pressure. (2) That the defendants have no right or title to said waters, or to divert or appropriate the same. (3) That the defendants be enjoined, pending this suit, from diverting or taking from said stream any water in excess of the actual amount heretofore and now diverted by them by and through the ditches and canals now in use by them, and not exceeding

two thousand inches of water, measured under a four-inch pressure, and that upon a final hearing they be perpetually enjoined from diverting or appropriating any of the waters of said stream in excess of that amount. (4) That the defendants be enjoined, pending this suit, from in any way interfering with or preventing the complainant from constructing its works for the purpose of diverting the waters of said stream, and said percolating waters, as belonging to it, or from diverting, appropriating, and using said waters, and that upon a final hearing they be perpetually enjoined from the doing of any of said acts. (5) That the rights of the complainant and defendants in and to the waters of the said Santa Ana river, and the quantity of water they, and each of them, are entitled to divert and appropriate from said stream, be ascertained and adjudged by the court. (6) That the complainant be decreed to be the owner of, and entitled to take out and use, the percolating waters in said land; that its title thereto be quieted; and that the defendants be decreed to have no right, title, or interest in or to the same. (7) That the complainant have judgment against the defendants for its costs in this behalf laid out and expended. (8) And for all other relief to which the complainant may in equity be entitled."

The defendants have filed exceptions to those parts of the bill concerning notices of appropriation and former adjudication, and have also demurred to the bill, as below set forth.

Upon the issues thus raised, my conclusions are as follows:

1. Counsel for defendants concede in their brief that, as against the general demurrer, that part of the bill relating to percolating waters sets forth good ground for relief, but claim that it is bad, as against the special demurrer for uncertainty, in that it fails to allege the sources of said waters. This objection, I think, is untenable.

2. Defendants' contention as to the alleged insufficiency of that part of the bill relating to complainant's riparian rights, because it fails to show the amount of water complainant is entitled to use, and does not make all riparian owners parties, is not well taken, but based upon an erroneous conception of complainant's case. The bill is not brought to determine, between riparian owners, the amounts of water they are severally entitled to use, but it is brought by one riparian owner against persons who, by virtue of alleged appropriation, claim the right to use all the waters of the stream. The bill affirmatively shows that the complainant is the riparian owner of about 135 acres of lands irrigable from said stream, and this is such an interest as will enable the complainant to contest the claims of the defendants, which embrace all the waters of the stream. The objection to this part of the complaint on the ground that it is uncertain, in failing to show the place of the proposed use of such waters, is not well taken.

3. The defendants' objection to that part of the complaint which relates to the Yorba ditch, on the ground that there is no sufficient averment of complainant's ownership, I think, is not well taken. While it is true that the context sometimes shows an averment of ownership to be a mere conclusion of law, as in Turner v. White, 73 Cal. 299, 14 Pac. 794, and Gruwell v. Seybolt, 82 Cal. 7, 22 Pac. 938, cited by defendants, such is not the case here. Complainant's ownership is pleaded as an ultimate fact, and not as a deduction from the alleged 20 years' user. The objection urged by way of special demurrer, that the allegation as to the title to the waters diverted from said ditch is uncertain, because it fails to show whether it results from appropriation or prescription, is not well taken.

4. The allegations of the bill as to notices of appropriation do not show any right or interest in the complainant entitling it to equitable relief.

Section 1415, Civ. Code Cal., provides, "A person desiring to appropriate water must post a notice, in writing," etc. The three sections immediately following prescribe the subsequent steps necessary to an appropriation, as follows:

"Sec. 1416. Within sixty days after the notice is posted the claimant must commence the excavation or construction of the works in which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted by snow or rain.

"Sec. 1417. By 'completion' is meant conducting the waters to the place of intended use.

"Sec. 1418. By a compliance with the above rules the claimant's right to the use of the water relates back to the time the notice was posted."

It is obvious that a person who intends to become an appropriator under these sections cannot acquire the exclusive right to the use of the water he intends appropriating, nor maintain any suit, either at law or in equity, for its diversion, until all the steps requisite to an appropriation have been taken.

A well-known text writer has said:

"The appropriation becomes perfect only when the ditches or canals are completed, the water diverted from its natural stream or channel, and actually used for beneficial purposes. * * * While the appropriator's dam and canal are in the process of construction, but he is not yet ready to actually use the water for the purpose intended, its use by other persons causes no injury to the first appropriator, and gives him no cause of action for relief, either equitable or legal, from the fact that his works are not in a condition to divert the water. But the prior appropriator has the right to use so much of the water as is necessary to preserve his flume or works from injury while in the process of construction." Kin. Irr. § 167.

Another text writer speaks to the same effect, as follows:

"The appropriation does not become perfect and final until the works are completed, so that the actual use of the water has begun, or at least so that its actual use can be commenced. Although, as will be shown hereafter, if the works are constructed with due diligence, the appropriation relates back to the date of the initial step, during the process of their construction, in the interval between their commencement and their completion, the appropriator acquires no vested, exclusive right to the water of the stream, and can maintain no action against other persons for their use or diversion of the water. Such right of action only arises when the works and the appropriation are completed, although, on the question of priority between the appropriator and other claimants, his appropriation then relates back to the time of his giving notice." Black, Pom. Water Rights, § 54.

From the statutory enactments and general principles above quoted and stated, the conclusion is not only fair, but unavoidable, that the only right which a person acquires by posting notice is the right to prosecute without interference the works necessary to consummate his intended appropriation. This doctrine is elsewhere stated as follows:

"The notice itself cannot constitute an appropriation of water, nor confer any right on the persons filing it, other than that of proceeding with reasonable diligence to complete the proposed appropriation. If they do not thus proceed, they have no rights whatsoever in the waters of the stream, con-

cerning the appropriation of which they have given their notice." Ditch Co. v. Bennett (Or.) 60 Am. St. Rep. 800, note (s. c. 45 Pac. 472).

The proposition that a person who has no title, legal or equitable, to the use of water, but has merely posted notice of an intended appropriation, and, within the time prescribed by law, commenced suitable works for diversion, can thereupon maintain a suit to determine an adverse claim to such use, is, in my opinion, wholly untenable.

The only case in point which has been called to my attention is Umatilla Irr. Co. v. Umatilla Imp. Co., 30 Pac. 30, decided by the supreme court of Oregon; and that case fully supports the views which I have above expressed.

The supreme court of California, construing section 738, Code Civ. Proc., has held, in Pennie v. Hildreth, 81 Cal. 127, 22 Pac. 398, that an administrator can bring an action to quiet title to real estate which belonged to his decedent; in Tuffree v. Polhemus, 108 Cal. 670, 41 Pac. 806, that the holder of an equitable title may "come before the court and have his equities declared superior to any and all opposing equities"; and in Pierce v. Felter, 53 Cal. 18, that the owner of a leasehold estate can maintain an action to determine an adverse claim made by another person; but it has never been held, in California or elsewhere, so far as I am advised, that a notice of appropriation confers any right to water or its use which can be quieted by judicial decree. In federal courts, where the remedies provided by state laws for quieting title, subject to certain qualifications, are followed (see Davidson v. Calkins [C. C.] 92 Fed. 230; Morrison v. Marker [C. C.] 93 Fed. 695; Adoue v. Strahan [C. C.] 97 Fed. 591; and cases below cited), ownership in the complainant, either by legal title or a perfect equity, has always been deemed essential to the maintenance of his suit.

In Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124, 39 L. Ed. 201, it was held (quoting the fifth paragraph of the syllabus):

"One having no title cannot successfully invoke the aid of a court of equity to remove a cloud from such nonexisting title."

In Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52, it was said:

"Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises."

And in Frost v. Spitley, 121 U. S. 557, 7 Sup. Ct. 1129, 30 L. Ed. 1010, that:

"The necessary conclusion is that Spitley, not having the legal title of the lots in question, cannot maintain his bill for the purpose of removing a cloud on the title."

And in Guarantee Trust & Safe Deposit Co. v. Delta & Pine Land Co., 43 C. C. A. 396, 104 Fed. 8, Judge Maxey says:

"It is obvious, therefore, that, if that deed did not pass the legal title, the appellant is without standing in court; for although, under the laws of Mississippi (Code 1892, § 500), a bill may be maintained in the circuit court of the United States by a person not in possession against another who is also out of possession, as is the case here, 'still this does not make the

complainant's rights any the less dependent upon title in him, nor does it put him in a position to have a cloud removed from a title which has no existence."

In Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733, the suit was maintained on an equitable title, but the equity was perfect.

5. The former judgment set forth in the bill is not an estoppel. Haldeman v. U. S., 91 U. S. 584, 23 L. Ed. 433; U. S. v. Parker, 120 U. S. 89, 7 Sup. Ct. 454, 30 L. Ed. 601. If the question, however, is to be determined by the statutes of California, and the decisions of the supreme court of that state, the conclusion reached will be the same. The pertinent provisions of the Code of Civil Procedure of California are as follows:

"Sec. 581. An action may be dismissed, or a judgment of nonsuit entered, in the following cases: * * * (2) By either party upon the written consent of the other.

"Sec. 582. In every case, other than those mentioned in the last section, judgment must be rendered on the merits."

The dismissal in the present case recites that it was entered on motion of defendants' attorneys, pursuant to a written stipulation between the parties, and therefore was a dismissal under subdivision 2 of section 581, above quoted, and not a judgment on the merits, under section 582. It is true that the stipulation provides that:

"Such dismissal may be had and motion of dismissal made by any of the said parties, without notice to the other parties to this stipulation, and that the party or parties so appearing and applying to the court for such dismissal may have the order of dismissal made and entered for all the parties."

But the attorney securing the dismissal failed to exercise the privilege last mentioned, and had the order entered solely on motion and behalf of defendants, for whom he appeared.

Merritt v. Campbell, 47 Cal. 542, rightfully understood, is not an authority against the conclusion which I have announced. The case is involved, and it is true that some of the utterances of Wallace, C. J., who wrote the first opinion, are favorable to the contention of the complainant herein, but those utterances were beyond the facts of the case. The circumstances of that dismissal are recited in the judgment itself, as follows:

"This cause came on regularly for trial; David Belden and Bodley & Rankin, Esqs., appearing as counsel for the plaintiffs, and Francis E. Spencer and Moore & Laine, Esqs., for the defendant. Whereupon, by agreement of the counsel for the respective parties, it was ordered by the court that this cause be dismissed; each party paying his own costs."

Thus it will be seen that both of the parties, through their respective counsel, were present in court, and openly participated in the dismissal. Such a dismissal might well be held equivalent to a retraxit at common law, which Blackstone defines thus:

"A retraxit differs from a nonsuit in this: One is negative, and the other positive. The nonsuit is a mere default or neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs; but a retraxit is an open, voluntary renunciation of his claim, in court, and by this he forever loses his action." 3 Bl. Comm. 296.

The form of the plea is as follows:

"That afterwards, to wit, in the said last-mentioned term, the said plaintiff came into the said court, in his own proper person, and confessed that he would not further prosecute his said suit against the said defendant, but from the same altogether withdraw himself." 3 Chit. Pl. p. 930.

The main characteristics of a retraxit at common law were: First, it was made by the plaintiff in person; second, it was made in open court. 18 Enc. Pl. & Prac. 899. The circumstance that it was or was not made pursuant to an agreement between the parties had nothing whatever to do with the character of the proceeding. In Merritt v. Campbell the dismissal had all the elements of a retraxit, except that the renunciation was made not by the plaintiff in person, but through his attorneys. And it was with reference to that distinction that Justice Wallace said:

"A retraxit at common law, it is true, must have been the act of the plaintiff appearing in his proper person in court. and not for that purpose by his attorney. But under our statute concerning attorneys and counselors at law (St. 1851, p. 49, § 9), this authority must be considered to be conferred upon the attorney of record in a cause (Board v. Younger, 29 Cal. 147), and his power extends to a proceeding of that character."

Again, Merritt v. Campbell was not dismissed by one of the parties upon the written consent of the other. Indeed, there was no written consent whatever for the dismissal, but it was made by the oral agreement of both parties in open court, or, as said by Justice Crockett in his opinion:

"The action was not dismissed by the plaintiff at his own cost, as provided in the first subdivision, nor by either party upon the written consent of the other, as provided in the second subdivision, but by the oral agreement of both parties in open court," etc.

The following paragraph, therefore, from the opinion of Justice Wallace, and partly quoted in complainant's brief:

"The statute (Practice Act, § 148) provides for both a judgment of nonsuit and a judgment of dismissal, and by subdivision 2 it is provided that a judgment of dismissal may be rendered at the application of either party upon the written consent of the other. We are of opinion that such a dismissal, when had by such consent, amounts to the open and voluntary renunciation of a suit pending, which must be held to operate a retraxit. We have the less hesitation in giving this construction to the statute because, in practice in this state, it has generally, perhaps universally, been considered to be the intention of the parties, in agreeing to dismiss an action, to thereby put an end to the controversy,"

—Was entirely outside the facts of the case, and therefore unauthoritative. The opinion of Crockett, J., on rehearing, states the facts correctly, and must be accepted as the true exposition of the doctrine the case enunciates, and implies that, when a dismissal is had by either party upon the written consent of the other, the judgment is not an estoppel. After quoting section 148 of the practice act then in force, which is embodied in the Code of Civil Procedure as section 581, he proceeds (section 149 is section 582, Code Civ. Proc.):

"These are the only conditions recognized by the statute on which a judgment of dismissal or nonsuit may be entered, and the plaintiff's case does not come within either of them. But section 149 of the practice act provides that 'in every case, other than those mentioned in the last section, the

judgment shall be rendered on the merits.' This judgment, therefore, not rendered in accordance with any of the provisions of section 148, but upon oral agreement of the parties in open court, and with a stipulation that the defendant would pay certain costs, which had not been adjudged against him, must be deemed to be a judgment against the plaintiff on the merits, rendered by consent of the parties."

On this subject, and with reference to Merritt v. Campbell, the supreme court of California, in a comparatively recent case, has said:

"(1) Defendant pleaded a judgment in bar, based upon the following facts: Plaintiff filed her complaint, and defendant answered. The time arrived for trial, and the plaintiff's attorney failed to appear. Thereupon defendant answered 'Ready,' and made a motion that the action be dismissed by reason of nonappearance of plaintiff. At this stage of the proceeding, plaintiff's attorney appeared and declined to further prosecute the action. The court thereupon ordered the action dismissed for want of prosecution, and gave judgment in favor of defendant for his costs. Thereafter a new complaint was filed upon the same cause of action, and defendant, by his answer, pleaded this aforesaid judgment in bar to the prosecution of the present action. Section 581 of the Code of Civil Procedure declares that an action may be dismissed or a judgment of nonsuit entered in the following cases: '(3) By the court when the plaintiff fails to appear on the trial, and the defendant appears and asks for the dismissal.' The succeeding section declares: 'In every case other than those mentioned in the last section judgment must be rendered on the merits.' In this case it may be fairly said that the plaintiff failed to appear at the time the case was called for trial, and under the authority of this section the court was justified in dismissing the action. We are not inclined to extend the doctrine of retraxit as recognized in the case of Merritt v. Campbell, 47 Cal. 543, and that case is essentially different in its facts from the case at bar. When there has been no adjudication of the cause upon its merits, it will only be in exceptional cases that this court will hold that a judgment of dismissal is the equivalent of a judgment of res adjudicata upon the facts. Upon reason, there is nothing to justify such a rule. Nothing has been litigated, and no principles of estoppel can be involved. If plaintiff had proceeded with the trial until nonsuited upon the weakness of her evidence, such judgment of nonsuit would not have been a bar to the commencement of the present action. How much less reason to declare a bar under existing circumstances! We find no direct authorities in this state upon the question, but in the case of Laird v. Morris, 23 Nev. 34, 42 Pac. 11, the matter is directly presented under a similar statute, and after careful consideration it was held that such a judgment was not a bar." Pyle v. Piercy, 122 Cal. 383, 55 Pac. 141.

These latest views of the supreme court of California are in substantial accord with those expressed by the supreme court of the United States in Haldeman v. U. S., supra, where it is said:

"There must have been a right adjudicated or released in the first suit in order to constitute it a bar, and this must appear affirmatively. The plea does not aver this, nor does it state any fact from which it can be inferred that the parties had any contest at all about their interests. There was neither trial nor decision, nor averment, even, that the parties had by their agreement adjusted the matter in controversy. Whatever may be the legal effect given in the courts of Kentucky to a judgment entry, 'Dismissed agreed,' it is manifest that the words do not of themselves import any agreement to terminate the controversy, nor do they imply an intention to merge the cause of action in the judgment. Suits are often dismissed according to the agreement of the parties, and a general entry made to that effect, without incorporating the agreement in the record, or even placing it on file. This agreement may settle nothing, or it may settle the entire dispute. If the latter, in order to avail as a bar, there must be a proper statement to that effect. But the general entry of the dismissal of a suit by agreement is no evidence of an intention to abandon the claim on which it is founded, but,

rather, of a purpose to preserve the right to institute a new suit if it becomes necessary. It is a withdrawal of a suit on terms. These terms may be more or less important. They may refer to costs, or they may embrace a full settlement of the contested points."

As to the effect of a stipulation for payment of costs, the supreme court of the United States, in the same case (Haldeman v. U. S., supra), said:

"But the counsel for the plaintiffs in error deny that this is the effect of the order, and insist that the pleas present a case of retraxit, by which the plaintiff forever loses his action, because the United States voluntarily announced to the court that, if the defendants would do what they were not bound to do,—pay the costs,—it would dismiss the suit. This announcement does not imply that the United States had no cause of action, or, if they had, they intended to renounce it. It implied nothing more than a willingness to receive the costs, and permit the dismissal of that particular action. There is no implication that the cause of action was adjusted. Nonsuits are frequently taken, on payment of costs by the adverse party, in order to arrange the controversy out of court, but it has never been supposed that the effect of such a proceeding was to prevent the institution and maintenance of a subsequent suit in case of failure to settle the matter in dispute. The defendants, in consenting to pay the costs on the withdrawal of the suit, gained delay, if nothing more, and this doubtless served their purpose; but the idea of turning this withdrawal into an intentional abandonment of the cause of action is an afterthought."

6. The objection of multifariousness is not well taken, because the bill alleges that the defendants claim, as prior appropriators, all the waters of the Santa Ana river, and that all of the rights and claims of right to the waters of said river pertain to and affect complainant's lands described in the bill, and that the controversy with respect thereto between complainant and defendants relates to and affects the rights and claims of right of the defendants in and to the waters of said river, and the extent of said rights, as against the complainant. 14 Enc. Pl. & Prac. p. 198 et seq.; Bates, Fed. Eq. Proc. § 134 et seq.; U. S. v. Guglard (C. C.) 79 Fed. 21; Kelley v. Boettcher, 29 C. C. A. 14, 85 Fed. 55.

The demurrer sets up various other objections to the bill for uncertainty, none of which, however, in my opinion, are well taken.

The allegations of the bill relating to notices of appropriation and a former judgment do not, as I have already held, show any independent rights to equitable relief, nor do they strengthen the right to relief under the other averments of the bill; and therefore the defendants' exceptions, all of which go to said allegations, will be allowed. Stirrat v. Manufacturing Co. (C. C.) 44 Fed. 142; Stonemetz Printers' Mach. Co. v. Brown Folding Mach. Co. (C. C.) 46 Fed. 72. Some of the matter covered by the tenth exception is pertinent, but so intermingled with the impertinent matter that one cannot be separated from the other, and under such circumstances the exception must be allowed. 19 Enc. Pl. & Prac. 210, note 1.

The demurrer will be overruled. While its third paragraph and the twelfth exception to the bill cover largely the same matters, yet said paragraph goes to several material averments not included in the exception.

Defendants are assigned to answer the bill at the next rule day.