[Civ. No. 3665. Third Appellate District.—February 26, 1929.]

ARTHUR H. LAMB et al., Appellants, v. CARRIE PAULINE HERNDON, etc., et al., Respondents.

Hugh K. McKevitt for Appellants.

Devlin & Devlin and W. H. Hatfield for Respondents.

JAMISON, J., *pro tem.*—This is an appeal from a judgment in favor of respondents in an action brought against them by appellants to restrain them, in the first count of the complaint, from proceeding with the sale of property, therein described, under a deed of trust to secure a note alleged to be usurious, and in the second count of said complaint demanding treble the amount of interest paid on said note and on a prior note executed by appellants to respondents Herndon and Finnigan.

The facts involved in this action are about as follows: Appellant Arthur H. Lamb held an option to purchase from the Red Men's Hall Association a certain piece of real property situated in the city of Sacramento for the sum of $75,000, said appellant to assume as a part of the purchase price a deed of trust thereon for $55,000.

On October 26, 1922, for the purpose of assisting said appellant in meeting the terms of said option the said association deeded said property to appellant's wife Phillis Lamb, taking back a mortgage on said property as security for the unpaid difference, some $17,000, between the purchase price and the $55,000 deed of trust. This arrangement was made under an agreement that in the event of a failure to pay the said mortgage appellants were to reconvey said property to the said association.

The improvements on said property consisted of a hall and lodge-room building and the property was worth approximately $75,000. Appellants, in the event of the purchase of said property contemplated remodeling same into a modern office and store building which, when so remodeled would be worth $250,000, but prior to May, 1923, had been unable to finance and purchase the property. Prior to said last-named date appellants had called for bids for the remodeling of said buildings and respondents Herndon and Finnigan, who were building and construction contractors, had put in a bid for $87,900 for said remodeling in accordance with plans and specifications submitted with said bid, which provided for progress payments monthly up to seventy-five per cent, the remaining twenty-five per cent to

be paid within thirty-five days after the completion of the building. On April 27, 1923, appellants' option on said property being about to expire, they obtained an extension by paying $500 therefor, which sum they borrowed from respondent Finnigan.

On May 29, 1923, there remained unpaid on account of said purchase price secured by said mortgage the sum of $14,500, which it was necessary for appellants to raise to complete the purchase under said option. Prior to that date appellants had been negotiating with Herndon and Finnigan in the endeavor to induce them to advance the money for the payment of said mortgage. These negotiations finally resulted in an agreement between the parties by which Herndon and Finnigan agreed to pay $12,000 on said mortgage, to finance the cost of remodeling said buildings, same to be done by Herndon and Finnigan, in accordance with the plans and specifications accompanying their bid as aforesaid, but that instead of progressive monthly payments, no payments were to be made by appellants until the completion of the buildings, that then seventy-five per cent of the contract price was to be paid, and the remainder in thirty-five days thereafter. That appellants were to deed Herndon and Finnigan a one-half interest in said real property, which interest was to be deeded back to appellants upon payment to Herndon and Finnigan of all sums agreed to be paid to them by or for appellants, Herndon and Finnigan obligating themselves, after the said one-half interest was conveyed to them to execute all necessary mortgages, deeds of trust and releases which might be necessary for the purpose of securing new loans on said property to carry out the purposes of the agreement. Herndon and Finnigan were to finance the work of remodeling said buildings, including furnishing and paying for all labor and materials used in said work, and that for the purpose of inducing Herndon and Finnigan to pay the said $12,500 on said mortgage and to finance the remodeling of said building and deferring payments of any part of the contract price until the completion of said building appellants agreed to pay them a bonus of $12,000. It is apparent from an inspection of the contract of May 29, 1923, wherein appellants claim the usury had its origin, and in which appellants agreed to pay the said bonus, that the consideration for said

bonus was not for the loan of the $12,500 alone, but that the said parties intended at the time and by that agreement that respondents should be given the contract for remodeling the building and should finance same and this intention was carried out by the parties in the contract of June 4, 1923, wherein respondents agreed to do these things, and it is apparent that the consideration for the bonus not only included the said loan but also the remodeling of said building and financing same.

Respondents filed a cross-complaint praying for the reformation of the within agreements, setting forth in their cross-complaint the aforesaid facts regarding said transaction.

The court made no special findings on the facts set forth in the cross-complaint,' stating that it was not necessary as the court had found that the agreements between the parties were fair and equitable.

The evidence produced by respondents to the effect that the bonus was to be paid not alone for the advancement by Herndon and Finnigan of said $12,000, but also for its financing of the remodeling of the buildings and the other things in connection therewith that they agreed to do, was offered and received without objection on the part of appellants.

The case appears to have been tried upon the theory that under the pleadings the court had the right, not only to consider the written agreements, but also extraneous facts and circumstances, including prior negotiations, for the purpose of determining whether or not the transaction was or was not usurious. A corrupt intent is one of the necessary elements of usury (Webb on Usury, 372; Tyler on Usury, 238), and to enable it to determine whether or not the intent existed the court had the right to admit in evidence all the surrounding circumstances and especially the negotiations that preceded the transaction. For as was said by the court in the case of *Douglass* v. *Boulevard Co. et al.,* 91 Conn. 601 [100 Atl. 1067] : "Every circumstance surrounding or connected with the transaction is material, if in any manner it will reveal the intention of the parties." (*Lowenstein & Son* v. *British-American Mfg. Co.,* 300 Fed. 853.)

The work of remodeling the said buildings was completed on February 26, 1924. Appellants not then being able to

secure a loan of said property and not being in a situation
to make the payment to Herndon and Finnigan called for
by their agreement, the latter conveyed back to appellants
the half interest in the property theretofore conveyed to
them and appellants thereupon executed their note to Hern-
don and Finnigan for the amount they owed them and
secured same by executing a deed of trust to them upon
said property subject to the said deed of trust for $55,000.
Thereafter Herndon and Finnigan transferred said note and
deed of trust to the California Trust and Savings Bank.
On September 10, 1924, appellants having defaulted in the
payment of principal and interest, the property was sold
under the authority existing in the deed of trust and Hern-
don and Finnigan were the purchasers at said sale for the
amount of the principal, interest thereon, attorney's fee
and costs of sale.

On September 10, 1924, appellants filed an action in the
superior court of Sacramento County, No. 33,113, against
Herndon and Finnigan and others, seeking to set aside the
sale under said deed of trust on the ground that said sale
was void because the note which same secured was usurious,
and on September 16, 1924, appellants filed another action
against Herndon and Finnigan and others in the superior
court of Sacramento County, No. 33,114, in which in the
first count thereof they sought to recover judgment for
some $33,000, alleging therein that said Herndon and Fin-
nigan had loaned appellants $12,500 and had exacted for
said loan a bonus of $12,000 for a period of only about ten
months; that appellants had paid Herndon and Finnigan
for said loan about $11,000 in excess of the legal rate of
interest, and judgment was asked for treble that sum. The
second count was for money had and received in the said
sum of $33,000.

On September 24, 1924, and while the two last-named suits
were pending, appellants and Herndon and Finnigan effected
a settlement of all matters existing between them; appellants
having secured a loan on said property for $160,000, paid
to Herndon and Finnigan some $76,000 and executed two
notes to Herndon and Finnigan, one for $48,000 secured
by a fourth deed of trust on the said property and the other
for $2,000 unsecured, Herndon and Finnigan conveying back
to appellants the aforesaid property. At the time of said

settlement appellant Lamb executed the following release:
"This is to certify that there has been a full settlement of
all matters between the parties hereto at this date, and that
the said undersigned, Arthur H. Lamb hereby acknowledges
receipt of all claims and demands of every kind and nature
that he has against Herndon and Finnigan or either of
them and the said Herndon and Finnigan acknowledge re-
ceipt of all claims of every kind and nature they have
against the said Arthur H. Lamb except the two notes
secured by trust deed of even date herewith."

Thereupon appellants delivered to Herndon and Finnigan
authorization for the dismissal of the said actions filed by
them on the 10th and 16th of September, 1924, as aforesaid
and they were both dismissed by the clerk of the court upon
the application of appellants' attorney on October 22, 1924.

The deed of trust on said property securing the note for
$48,000 executed by appellants to Herndon and Finnigan
contained a provision by which default might be declared
for failure to pay the interest accruing on the prior encum-
brances on said property. Appellants defaulted in the pay-
ment of such interest and thereafter Herndon and Finnigan
caused the said property to be sold under the deed of trust
and bid the property in for $40,000, leaving a deficiency,
with accrued interest, amounting to $14,479.98, and in their
supplemental cross-complaint herein Herndon and Finnigan
asked judgment for said deficiency.

Appellants in their opening brief state that the material
questions of fact involved in this case are whether or not
in its inception the transaction between appellants and re-
spondents Herndon and Finnigan was usurious and if so
whether or not the usury was purged by the settlement of
September 24, 1924.

As to the first of these questions the trial court
found that from about the twenty-sixth day of October, 1922,
until May 29, 1923, appellants had been, and were, unable
to complete and finance the purchase of said real property,
or to arrange for financing the remodeling of said building.
That Herndon and Finnigan were at all of said times
building and construction contractors engaging solely in
said business and that prior to said 29th of May, 1923, they
had submitted to appellants a bid for said remodeling calling
for progressive monthly payments, and that it was with

the intent and purpose of all of said parties to fix and determine the terms and conditions and compensation upon which the said Herndon and Finnigan should render assistance to appellants and remodel said building, advance the $12,500 to pay on the mortgage given to said association, provide material and labor necessary in said remodeling and generally finance the said work and not require any payments from appellants until said work was completed, that the agreements dated May 29, 1923, and the building contract of June 4, 1923, were made in which it was agreed that said Herndon and Finnigan should receive said bonus of $12,000; that it was not the intention or agreement of said parties that the money agreed to be paid to Herndon and Finnigan as a bonus was to be paid as a bonus upon any loan, but it was the intention and the agreement between the parties that said $12,000 should be paid for and in consideration of all the aforesaid things done and agreed to be done by said Herndon and Finnigan for appellants in financing the purchase of said real property and remodeling the buildings thereon.

The Usury Law of this state (Stats. 1919, p. lxxxiii), provides that no person shall directly or indirectly take or receive any money, goods, or things in action, or in any other manner whatsoever, any greater sum, or any greater value, for the forbearance of money, goods, or things in action than at the rate of $12 upon the $100 for one year; and that any agreement or contract of any nature in conflict with this provision shall be null and void as to any agreement or stipulation therein to pay interest, and that the debt cannot be declared due until the full period of time it was contracted for has elapsed.  █  It is a well-settled principle of the law that usury can attach only for the loan or forbearance of money, goods, or things in action at a rate of interest in excess of that provided by law. On a contract to secure the price or value of work and labor done or to be done, or of property sold the contracting parties may agree upon one price if cash be paid and upon as large addition to the cash price as may suit themselves if credit be given. It is neither a loan nor the forbearance of a debt, but simply a contract price of work and labor done or property sold. (*Graeme* v. *Adams*, 23 Gratt. (Va.) 225 [14 Am. Rep. 130]; *Cockle* v. *Flack*, 93 U. S. 344 [33

L. Ed. 949, see, also, Rose's U. S. Notes]; *Case* v. *Fish,* 58 Wis. 56 [15 N. W. 808].)

In the case of *Shelley* v. *Byers,* 73 Cal. App. 44 [238 Pac. 177], the owners of a department store became bankrupt. They agreed with Gollobur and Rosenberg that the latter should advance $140,000 to purchase the stock of goods and make composition with the creditors, the bankrupts to repurchase the stock within four months for $150,000. Gollobur and Rosenberg agreed to conduct a sale during the four months and recover as much as possible of the purchase price through the proceeds, any balance to be paid in cash by the bankrupts. Gollobur and Rosenberg actually expended some $68,000 on the transaction. The amount they were to receive on the repurchase price was in excess of twelve per cent per annum on the money used. The court found that the transaction was a pledge. The court held that the $10,000 bonus was not a violation of the usury law, but was for interest on the money they were to use in the matter, and also for their business sagacity and trouble in reorganizing the business.

It is also a general principle that when payment of full legal interest is subject to a contingency so that the lender's profit is wholly or partially put in hazard the interest so contingently payable need not be limited to the legal rate, providing the parties are contracting in good faith and without the intent to avoid the statute against usury. (*Jameson* v. *Warren,* 91 Cal. App. 590 [267 Pac. 372].) It was known to the parties hereto at the time said transaction was entered into that the only means by which appellants could repay Herndon and Finnigan was by securing a loan on the building when remodeled. In the event that appellant failed to secure such loan then Herndon and Finnigan would have to look for payment of their outlay in financing the purchase of the property and remodeling the building to the equity owned by appellants in the property. We are of the opinion that the finding of the trial court that the bonus was not agreed to be paid for the forbearance or loan of money was supported by the evidence.

The court also found, as to both causes of action set forth in appellants' complaint, that on September 24, 1924, appellants through their attorney, Jesse Robinson, filed dis-

missals and *retraxits* in both of said suits in the following words:

"The above entitled action having been fully compromised and settled the same is hereby discharged and the clerk of the Superior Court of the State of California in and for the County of Sacramento is hereby authorized and directed to enter a dismissal of said action forthwith and this is a *retraxit* of said suit.

"Dated September 24th, 1924.

"JESSE ROBINSON,
"Attorney for Plaintiffs."

Freeman in his work on Judgments, volume 1, section 7, page 12, says with reference to judgments on *retraxit*: "A *retraxit* differs from a nonsuit in this: One is positive, the other is negative. The nonsuit is a mere default or neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs, but a *retraxit* is an open, voluntary renunciation of his claim in court, and by this he forever loses his action."

A *retraxit* occurred at common law when a plaintiff came into court in person and voluntarily renounced his suit or cause of action. Under our law this *authority* is deemed to have been conferred upon the attorney. (*Westbay* v. *Gray*, 116 Cal. 660 [48 Pac. 800]; *Merritt* v. *Campbell*, 47 Cal. 543.)

In the case under consideration, had the application for dismissals of said cases Nos. 33,113 and 33,114 been made in open court upon the agreement of the litigants as hereinbefore set forth and thereupon the court had entered judgments of dismissal they would have been judgments on *retraxit* and would have barred further litigation of the matters involved. (*Merritt* v. *Campbell*, supra; *Westbay* v. *Gray*, supra; *Hibernia. Sav. etc. Society* v. *Portener*, 139 Cal. 90 [72 Pac. 716].) Subdivision one of section 581 of the Code of Civil Procedure provides for a dismissal of the case by plaintiff by written request to the clerk filed with the papers in the case and such dismissal may be made by an entry in the clerk' register. This was the method adopted in dismissing said cases 33,113 and 33,114. There were no judgments ordered or entered by the court in either of said actions. Where the parties appear in open

court and stipulate for a dismissal the situation is not covered by said section 581, but is a judgment on the merits as contemplated by section 582 of the Code of Civil Procedure. (*McCord* v. *Martin,* 47 Cal. App. 717 [191 Pac. 89].) But in the case of *Rincon Water & Power Co.* v. *Anaheim Union Water Co.,* 115 Fed. 543, the court, in construing sections 581 and 582 of the Code of Civil Procedure, held that a dismissal by defendant's attorney, pursuant to a written stipulation between the parties was not a judgment on the merits which concluded the rights of the parties. In the case of *Pyle* v. *Piercy,* 122 Cal. 383 [55 Pac. 141], the court said: ''We are not inclined to extend the doctrine of *retraxit* as recognized in the case of *Merritt* v. *Campbell,* 47 Cal. 543, and that case is essentially different in its facts from the case at bar. When there has been no adjudication of the case upon its merits it will only be in exceptional cases that this court will hold that a judgment of dismissal is the equivalent of a judgment *res adjudicata* upon the facts.''

However, the trial court found that on September 24, 1924, all differences then existing between the parties were compromised, satisfied and discharged. This agreement and settlement was based upon a good and sufficient consideration. By that settlement respondents as a consideration for the dismissal of said actions 33,113 and 33,114 and settlement of all disputed matters then existing between them and appellants deeded back to appellants the aforesaid property, deducted a charge of $1,000 owing them by appellants and accepted appellants' note for $48,000 secured by a deed of trust upon said property subject to three encumbrances totaling $160,000.

Like a judgment, in the absence of a showing of fraud or undue influence, a compromise agreement is decisive of the rights of the parties thereto. (5 Cal. Jur., p. 399.)

It is the fixed policy of the law to encourage the settlement of disputes and the prevention of litigation and when such settlement has been made, acted upon and acquiesced in, parties will not be permitted to violate the compact unless circumstances of fraud or undue influence are shown. (*Bree* v. *Wheeler,* 4 Cal. App. 109 [87 Pac. 255]; *Hale* v. *Akers,* 69 Cal. 160 [10 Pac. 385] *Armstrong* v. *Sacramento Valley R. Co.,* 179 Cal. 648 [178 Pac. 516];

*Crossman* v. *Davis,* 79 Cal. 603 [21 Pac. 963].) In this last-named case the court said: "the only real question presented by the record is, whether or not a certain agreement between the grantors of the parties to this action, by which the said parties compromised and dismissed an action pending . between them involving title to this same property was a bar to the plaintiff's claim to an interest therein. The court below found that the dismissal of the action under a special agreement involving other disputed matters was sufficient to bar plaintiff's claim and in this we think the court was right. The plaintiff had full knowledge of the agreement and dismissal and must be held to have been bound thereby." Even though there had been usury in the original transaction, it would seem that upon a settlement upon which each of the parties released the others from all claims and liabilities of every character then existing, the right to rely upon a previous usurious transaction would cease to exist. (*Ector* v. *Osborne,* 179 N. C. 667 [13 A. L. R. 1207, 107 S. E. 388]; *Hoopes* v. *Ferguson,* 57 Iowa, 39 [10 N. W. 286]; *Blohm* v. *Hannan,* 82 N. J. Eq. 192 [88 Atl. 622].)

■ This court is of the opinion that by the compromise and settlement entered into by appellants and respondents on September 24, 1924, all the alleged rights and claims of appellants as set forth in their complaint filed in this case were settled and determined, and that the finding of the trial court to that effect is fully sustained by the evidence.

There is no claim made, nor any evidence offered that the sale under the deed of trust was otherwise than regular, legal, and in conformity with the requirements of said instrument.

The only contentions made by appellants for reversal, other than the said claim of usury, are that the findings of the court are not supported by the evidence and as to these contentions we think they are without merit.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.