[Civ. No. 28723.   Second Dist., Div. Three.   Sept. 6, 1966.]

SIDNEY KOGAN et al., Plaintiffs and Appellants, v. ROBERT BERGMAN et al., Defendants and Appellants.

McCutchen, Black, Verleger & Shea, Harold A. Black, Byron Hayes, Jr., and Jack D. Fudge for Plaintiffs and Appellants.

Jerome Weber and Bernard Mattison for Defendants and Appellants.

FRAMPTON, J. pro tem.*—Appeal by defendants from a judgment entered in an action upon a promissory note and cross-appeal by plaintiffs from a portion of such judgment.

The evidence below discloses the following: The plaintiffs, commencing in about the year 1952, purchased, through the defendant Robert Bergman, numerous promissory notes secured by deeds of trust. Robert Bergman acted in the capacity of a broker in these transactions, and his company took care of all of the details relating thereto such as preparing all documents, recording of documents and providing for the proper disbursement of funds and the payment of expenses. In January of 1956 plaintiffs for the first time made a loan directly to the defendants for which they received a

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

promissory note secured by a trust deed upon the home of the defendants. This loan was subsequently paid off in full and is not the subject of this litigation.

Shortly before August 9, 1956, the defendant Robert Bergman (hereinafter referred to as Bergman) approached the plaintiffs on the subject of another personal loan. Sidney Kogan (hereinafter referred to as Kogan) testified in relation to this transaction that on or about August 6, 1956, Bergman called him by telephone and said that he had a terrific deal; that Kogan went to Bergman's office to see about it at which time Bergman said that he needed about $100,000 for expansion and he asked Kogan how much he could raise; that Kogan told Bergman that he thought he could raise about $30,000 if he could get money from his bank; that Bergman said that if Kogan could give him $35,000 he would give Kogan a note for $65,000 and that Bergman had the note in his hand already prepared. Kogan testified further that he told Bergman that he could not take that kind of money and left Bergman's office.

Kogan testified that Bergman called him by telephone the next day and said he had ''a very good deal for us''; that he and his wife then went to Bergman's office where Bergman offered them a note for $47,500 for a loan of $35,000; that this was not ridiculous like the offer of the note for $65,000 and ''I told him I would let him know''; that he and his wife then went to the Citizens National Bank where they borrowed $35,000 and then returned to Bergman's office where he gave Bergman a check for this amount and received from Bergman a promissory note in the face amount of $47,500.[1]

---

[1] ''PROMISSORY NOTE

''$47,500.00                    Beverly Hills, California, August 9, 1956

''In installments as herein stated, for value received, the undersigned promise to pay to the order of SIDNEY KOGAN and ANNE KOGAN, husband and wife, as joint tenants, at Los Angeles, California,              the sum of Forty-seven Thousand Five Hundred and 00/100      ($47,500.00) DOLLARS, with interest from date on the unpaid principal at the rate of ten per cent (10%) per annum, payable on each principal payment date; principal payment in installments of Two Thousand and 00/100— ($2,000.00) DOLLARS, or more, on the 25th day of each and every month, beginning on the 25th day of September, 1956, and continuing until August 25, 1957, on which date the then remaining principal and accrued interest shall be paid.

''Should interest not be so paid it shall thereafter bear like interest as the principal. Should default be made in the payment of any installment of principal or interest when due, the whole sum of principal and interest shall become immediately due at the option of the holders of this note. Principal and interest payable in lawful money of the United States. If action be instituted on this note, the undersigned promise to

At the time this note was exchanged for the check the following took place according to Kogan: "Q. By Mr. Hayes: Mr. Kogan, in your conversations with Mr. Bergman at that time did you have any conversations concerning security for this note? A. Well, the security is all typed on here. He gave me all the furniture and fixtures in the Ideal Mortgage Company, and his two automobiles, all his cash, the bonds, everything. He said, 'I will give you everything I have. Everything I own is yours on this note for this $35,000.' Q. Did he ever give you any of these things? A. No, sir. I asked him for the pink slips on his automobiles and he says they were mortgaged at the bank. I asked him for the chattel on the furniture, and he said he couldn't give it to me. I asked him for—I didn't get anything but this slip. That is all I got for that $35,000. He just gained my confidence. . . ." Kogan testified further: "The Court: You thought you were getting a secured loan but it turned out otherwise; . . . The Witness: I thought whatever was on that note. The Court: You thought you were getting it. The Witness: Yes, and he was supposed to follow up, you know, with the chattel and with his pink slips, and I didn't get anything."

Bergman said nothing about recording the note. However, Kogan recorded the note in the office of the County Recorder of Los Angeles County on the same day that he received it.

About January of 1957, Kogan became uneasy about the loan because Bergman had been slow in his payments and Kogan had "seen a lot of things at his place that was going on that we didn't like, and we thought we would check on our note here and see what we can do about it. . . ." Kogan took the note to a title company and discussed the transaction with one of the officers of the company and as a result of this

---

pay such sums as the court may fix as attorneys' fees and costs of collection thereof.

"As security for this note the undersigned assign all their right, title and interest in all stock, proprietorship and assets in Ideal Mortgage Co., a California corporation and Service Escrow Co., a California corporation; all assets in other properties, real or personal, owned by the undersigned or shall be owned by the undersigned until this note is fully paid, including but not limited to all equities in real estate, bonds, automobiles, furniture, fixtures and equipment, cash, cash equities of insurance, assignments of all leases, etc. The undersigned warrant that they are the sole owners of all proprietorship, stock and assets of said Ideal Mortgage Co., a California corporation and Service Escrow Co., a California corporation. This note shall be the first obligation of the undersigned, or their estate, until paid in full.

Robert Bergman
Harriet Ellen Bergman"

discussion learned that the transaction was usurious. Kogan then told Bergman of his conversation with the official of the title company and that he wanted Bergman to correct the note "to the legal rate of interest, that I didn't want to get mixed up with any usurious note." At this time Bergman said, "They are crazy. I could give you any interest I want. . . . This isn't a trust deed. It is an unsecured promissory note and I can give anything I want. . . . On the notes that you bought from me before there is 10 percent, but on this, . . . I can give you anything I want." Kogan said, " 'Well, I would rather have you correct it to the 10 percent and I would be satisfied.' " Bergman said, " 'Okay, then, I will take care of it.' " Kogan testified further that after about three months of running after Bergman practically every day, Bergman handed him a memorandum showing the figure of $13,602.36 as an adjustment of the debt to be credited on the note. This adjustment was made July 15, 1957.

It was shown by the testimony of a certified public accountant that the sum of $13,602.36, computed by Bergman and accepted by Kogan represented an adjustment and credit upon the note for $47,500 which took into consideration and included the payment of interest at 10 percent per annum upon the sum of $35,000 with declining balances showing payments thereon from August 9, 1956.

Kogan talked to Bergman in May of 1957, at which time he told Bergman "I thought we should have a little more security for this here as long as he didn't give me the pink slips, and all the rest of the chattel mortgage, and everything." Kogan testified "He promised me everything but I didn't get nothing, not a thing."

At this time Bergman told Kogan "I will give you more security," and delivered to Kogan 11 promissory notes each secured by a deed of trust and executed by third persons on various pieces of real property. These documents bore the date of May 15, 1957. Kogan recorded these trust deeds in the office of the County Recorder of Los Angeles County. Eight of these trust deeds proved to be third encumbrances and upon foreclosure by the holder of the paramount lien it developed that they had no value. Upon foreclosure of three of the trust deeds there was realized the sums of $597.89, 551.75 and $50 respectively, which sums were credited upon the $35,000 loan.

The record discloses that Bergman made 10 payments upon the $35,000 loan between September 25, 1956 and July 31,

1957, totaling $20,156.23. The record also shows that credit was given upon the balance due upon the note for the proceeds received from the foreclosure of the three trust deeds heretofore mentioned. The next payments upon the note are shown as follows: June 26, 1959—$1,000; July 3, 1959—$500; and July 12, 1959—$500.

The Bergmans had borrowed money and had given as security for the repayment of these loans promissory notes secured by deeds of trust upon their home. These may be referred to as the California Bank loan, the Alison loan and the Koplowitz loan. The California Bank loan became in default and on February 25, 1958, an action was filed to foreclose the trust deed given as security for the loan as well as to foreclose with respect to other securities which had been delivered to the bank to secure the payment of the loan. The Kogans were named as defendants in this foreclosure action as parties claiming some interest in the securities to be foreclosed. The Kogans filed a cross-complaint in this action in which they alleged that they had a mortgage on the securities, the subject of the foreclosure action, and that their mortgage was prior in time to the lien of the bank.

On or about May 12, 1959, Martin F. Brodkin, the son-in-law of the Kogans, purchased the California Bank note and trust deed, and received a trustee's deed to the Bergmans' home property. Brodkin also paid off the Alison and the Koplowitz loans.

On or about June 11, 1959, Brodkin filed an unlawful detainer action against the Bergmans. It appears that at this time one Lucius F. Foster, acting as the agent of Brodkin, had served upon the Bergmans a notice to quit prior to the filing of the unlawful detainer action. At this time Foster was also the agent for the Kogans for the collection of money due to them.

The payments totaling the sum of $2,000 heretofore mentioned as having been made in the months of June and July 1959, and credited by the Kogans on the $35,000 debt, were made by Bergman to Foster and were in turn paid over by Foster to the Kogans under the following circumstances: At the time of each payment, Foster delivered to Bergman a receipt which stated in substance that the payment was to apply on the Kogan note to reduce the balance thereon. Foster's explanation of these transactions was that "The money was given to the Kogans who interceded with Mr. Brodkin not to proceed with the unlawful detainer, and not to

throw Mr. Bergman out of his house, rather, as long as he made payments to the Kogans on their note; and the Kogans prevailed on Brodkin to hold tight, not to remove him from the house as long as he made the payments on the Kogans' note.'' The $35,000 debt was the only loan outstanding between the Kogans and the Bergmans at the time these payments were made.

The last payment made on the $35,000 loan was on July 12, 1959. Thereafter Brodkin obtained and entered into possession of the Bergman home property and on August 17, 1959, entered into an escrow agreement for the sale of the property to one Lewis and his wife. This sale was consummated and in connection therewith the Kogans were asked to and did, on August 24, 1959, execute a partial release which according to its terms released the real property described therein (the Bergman home property) from the lien of the note and assignment for $47,500 recorded on August 9, 1956. No consideration was paid by Brodkin for this release. It appears that the Title Insurance and Trust Company in the preparation of its guarantee had listed as an exception thereto ''the effect of the note and assignment dated August 9, 1956, executed by Robert Bergman and Harriet Ellen Bergman to Sidney Kogan and Anne Kogan, husband and wife, as joint tenants, recorded August 9, 1956, Book 51984, page 29, Official Records, for $47,500 covering all assets, real and personal.''

On March 2, 1962, the plaintiffs filed their action for the amount due under the promissory note. On March 23, 1964, the original judgment was entered in favor of the plaintiffs and against the defendants in the principal sum of $13,432.96 plus accrued interest thereon as of March 2, 1964, in the sum of $6,181.42 plus interest accruing at the rate of 10 percent per annum on the unpaid principal until paid, ''or judgment is entered herein,'' together with reasonable attorneys' fees in the amount of $1,285.62 and costs in the amount of $696.81.

On motion for a new trial and on May 20, 1964, the trial court modified its findings and the judgment to provide for the principal balance in the sum of $13,432.96 plus interest accrued to March 20, 1964, in the sum of $6,248.57. The calculations upon which the modification of the judgment are based disclose that no interest was allowed upon the $35,000 loan from August 9, 1956, to and including July 15, 1957; that all payments made by the defendants after August 9, 1956, up to and including the payment on July 15, 1957, were credited in total against the $35,000 principal obligation without any

allocation of any portion of such payments to interest on the declining balances.

The defendants' appeal is from the whole of the judgment and the plaintiffs' appeal is from that portion of the judgment which denies them interest on the principal obligation and the balances remaining thereon after credit given for the payments made between August 9, 1956, and July 15, 1957, the date upon which the original transaction was purged of the taint of usury.

The defendants attack the judgment upon the following grounds:

1. That the finding that the promissory note was an originally unsecured note is not supported by the evidence.

2. The finding that all security for the promissory note had become valueless without any act of the respondents was not supported by the evidence.

3. That the action was barred by the provisions of section 726 of the Code of Civil Procedure.

4. That the action was barred by the statute of limitations, section 337 of the Code of Civil Procedure.

5. There was insufficient evidence to support the finding that both parties had entered into an oral executed agreement which served to remove the taint of usury from the transaction, and therefore, the respondents are not entitled to any interest.

As to the first ground of attack, although the promissory note was not executed in the form of a mortgage, containing a description of the real property intended to be mortgaged thereby (Civ. Code, § 2948), even though such description was readily available to the Bergmans, it is clear from the record that Bergman, from his long experience as a mortgage broker, was qualified to prepare and execute a legal mortgage, had he intended to do so. There was other evidence in the record to sustain the inference that Bergman did not intend the note, standing alone, to constitute a legal mortgage upon any of the property, real or personal, mentioned therein. There is also evidence in the record to sustain the inference that Kogan, in accepting the note, was under the belief that Bergman by the terms of the note had only promised to execute and deliver to Kogan instruments of security or transfer independent of the note which in and of themselves would constitute security for the payment of the loan. Under these circumstances the court's finding that the note was an originally unsecured note is amply supported by the evidence.

Appellants' second attack upon the judgment is predicated on the assumption that the terms of the promissory note constituted a legal mortgage upon the home property of the Bergmans and that the execution by the Kogans of the partial release of this property in favor of Brodkin was a voluntary act on their part which released the security under the mortgage and that under these circumstances the Kogans are precluded from pursuing their action upon the debt. (*Merced Bank* v. *Casaccia,* 103 Cal. 641 [37 P. 648].) This attack, however, may not be sustained against the finding of the trial court, supported by sufficient evidence, that the promissory note sued upon was an originally unsecured note.

Appellants' third attack upon the ground that plaintiffs' cause of action was barred by the provisions of section 726 of the Code of Civil Procedure is also predicated upon the premise that the promissory note was an originally secured note. Such contention cannot stand in the face of the contrary finding. The most that can be said of the provisions of the promissory note relating to security, under the evidence and the findings of the court, is that such provisions constituted a promise to give a mortgage or a trust deed on particular property as security for a debt, and thus could be specifically enforced by granting an equitable mortgage. (*Coast Bank* v. *Minderhout,* 61 Cal.2d 311, 313-314 [38 Cal.Rptr. 505, 392 P.2d 265].) ■ ''Plaintiff did not sue to establish an equitable lien but, relying upon his contract, sued for damages for its breach. He might have asked that a lien be declared to aid in enforcing the judgment (*Beckwith* v. *Sheldon,* 168 Cal. 742, 747 [145 P. 97, Ann.Cas. 1916A] ; *Beal* v. *United Properties Co.,* 46 Cal.App. 287 [189 P. 346]), but he was not required to do so. It is only a debt which is secured by a mortgage on real or personal property which must be enforced under the provisions of section 726 of the Code of Civil Procedure. The fact that a debtor has agreed to execute a mortgage to secure the debt does not require the creditor to first establish an equitable lien and sue under that section. He may stand upon his contract and sue for its breach.'' (*Snyder* v. *United Properties Co.,* 53 Cal.App. 428, 433 [200 P. 366].) ■ Here the court found upon sufficient evidence that the promissory note sued upon was an originally unsecured note. As to the eleven trust deeds subsequently delivered by Bergman to Kogan as security for the payment of the note, eight of them had proved to be without value and the proceeds of the remaining three had been credited upon the balance

due. This left the Kogans with no alternative but to sue on the note after the default in the payments in accordance with its terms. Under the evidence and the law the Kogans were not required to bring a suit in equity to establish an equitable mortgage and then seek to foreclose it, but they were entitled to bring their action directly upon the promissory note, and such action was not barred by the provisions of section 726 of the Code of Civil Procedure.

Appellants' fourth ground of attack upon the judgment raises the bar of the statute of limitations of four years as set forth in section 337 of the Code of Civil Procedure. It is claimed that the court's finding to the effect that the payments made by appellants to respondents in June and July of 1959 constituted payments upon the promissory note is not supported by the evidence.

As heretofore pointed out, prior to the time these payments were made, Brodkin had brought an unlawful detainer action against the appellants seeking their eviction from the real property which constituted their home. Kogan interceded with Brodkin and induced him to desist from further prosecution of the unlawful detainer action so long as the appellants made payments upon the Kogan note. According to the evidence Bergman was fully aware of this arrangement and with knowledge thereof delivered the payments to Foster who was acting as the agent of the Kogans, and who in turn delivered the payments to the Kogans and such payments were thereafter credited upon the note in accordance with the foregoing arrangement. The evidence before the trial court was sufficient to sustain its finding that these payments tolled the statute of limitations. (Code Civ. Proc., § 360.) According to the evidence the last of these payments was made on July 12, 1959, in the sum of $500. Plaintiffs' action was filed on March 2, 1962, well within four years after receipt of the last payment upon the note.

Appellants' fifth ground of attack raises the sufficiency of the evidence to sustain the finding that there was an executed oral agreement which purged the original transaction of the taint of usury. As heretofore pointed out, the evidence in this connection shows that in the early part of 1957 Kogan, through his interview with an official of a title company, discovered that the transaction was usurious and insisted that Bergman correct the transaction so that the note would evidence a loan of $35,000 with interest thereon at 10 percent per annum. Bergman agreed to this after some argument with Kogan wherein Bergman claimed the transaction was not

usurious in character. After running after Bergman almost daily for a period of three months Kogan finally obtained from Bergman a typewritten memorandum showing an adjustment in the form of a credit to be given Bergman on the original transaction in the sum of $13,602.36. The evidence further shows that Kogan accepted this figure as a proper adjustment and credited the note in this amount. It also shows that the adjustment memorandum prepared by Bergman, or under his direction, and delivered by him to Kogan was on the basis of an original $35,000 loan carrying interest at the rate of 10 percent per annum from August 9, 1956, on the declining balances down to and including June 5, 1957. Payments on the note as adjusted were thereafter made by Bergman and accepted by Kogan. The evidence was sufficient to sustain the finding of an executed oral agreement purging the original transaction of the taint of usury.

"Though a contract is tainted with usury, the abandonment of the usurious agreement and the execution of a new obligation for the amount of the actual debt free from the usury and bearing only legal interest, purges the original usury and makes the second obligation valid and enforcible." (*Whittemore Homes, Inc.* v. *Fleishman*, 190 Cal.App.2d 554, 560 [12 Cal.Rptr. 235]. See also *Westman* v. *Dye*, 214 Cal. 28, 38 [4 P.2d 134]; *Lamb* v. *Herndon*, 97 Cal.App. 193, 204 [275 P. 503]; *Credit Finance Corp.* v. *Mox*, 125 Cal.App. 583, 586 [13 P.2d 937]; *Aspeitia* v. *California Trust Co.*, 158 Cal.App. 2d 150, 155 [322 P.2d 265]; 91 C.J.S., Usury, § 78, p. 654; 55 Am.Jur., Usury, § 97, p. 391.)

As to the cross-appeal, the evidence is uncontradicted that the executed oral agreement purging the original transaction of the taint of usury provided that Kogan was to receive 10 percent interest per annum on the declining balances remaining unpaid on the sum of $35,000 from August 9, 1956, to and including July 15, 1957. This the trial court refused to allow.

The court is directed to amend its judgment to allow the plaintiffs the additional interest in accordance with the views expressed herein.

The judgment as so amended is affirmed. The plaintiffs are awarded their costs on appeal.

Ford, J., and Kaus, J., concurred.