[Civ. No. 27308. First Dist., Div. Three. May 3, 1971.]

KAISER INDUSTRIES CORPORATION, Plaintiff and Respondent, v. ROBERT H. TAYLOR et al., Defendants and Appellants.

## COUNSEL

Lempres & Seyranian, Lempres, Duncan & Morgan and H. James Wulfsberg for Defendants and Appellants.

Eustice, Feeley & Maguire and W. Gordon Eustice for Plaintiff and Respondent.

## OPINION

**BROWN (H. C.), J.**—This is an appeal from a judgment awarding respondent Kaiser Industries $69,514.68 and attorney's fees in the sum of $2,500 in an action on a promissory note.

The principal question is whether the note was secured by an equitable mortgage and, if so, whether, under Code of Civil Procedure section 726, respondent was required to foreclose on that mortgage.

The evidence disclosed that appellant Taylor and West Bay Building Co. were indebted to Sondgroth Brothers for approximately $54,000 for paving and grading. Respondent Kaiser Industries bought the assets of Sondgroth Brothers, including as part of those assets the indebtedness of Taylor and West Bay Building Co. At the time of sale the indebtedness was an open book account with a continuing guaranty signed by appellant Taylor. The account being delinquent, respondent requested appellant to execute a note to be secured by a deed of trust on real property. Efforts were made to obtain a deed of trust on apartments in Sunnyvale owned by Taylor as security for the note, but when this effort failed, an arrangement was offered by appellant which involved other real property in Santa Cruz in which he had an interest. Title to this property, commonly known as the Western Hills Ranch property or Hie Away Ranch, was held by Western Title Guaranty Company pursuant to a holding agreement subject to the instructions of Robert V. Henderson and Robert H. Taylor, appellant herein. The ownership of the property was not established at trial, but

appellant testified that at the time in question he had a 50 percent interest in the property.

Respondent reviewed a preliminary title search, and was made aware of the holding agreement. Appellant placed a value of $400,000 on the property. Respondent's credit manager decided that the arrangement proposed by appellant "seemed like a good solution." Under this arrangement, respondent received two instruments from appellants: (1) a letter of instructions from appellants to Western Title Guaranty Company dated January 19, 1967, and (2) a promissory note dated January 1, 1967 in the amount of $64,828.19 in favor of respondent.

The terms of the letter of instructions provided that appellants' interest in the property could not be transferred or encumbered without respondent's consent until the promissory note was paid in full. The note was attached to the letter and made an integral part thereof.

Respondent carried the notation, "holding agreement" under the heading "Collateral" on its books as evidencing appellants' indebtedness to respondent.

Respondent also received a letter from Western Title Guaranty Company acknowledging that they had received the instructions and that they would hold the property pursuant to the instructions. When appellant failed to pay the note pursuant to its terms, respondent filed a request for notice of default on the property. The vice president of Western Title Guaranty Company testified that holding agreements such as the one to which the letter of instructions applied were not uncommon. He stated that once the title company received the January 19, 1967 letter, the title company was bound by the instructions contained in the letter and could no longer deed the property to anyone without the consent of both "Kaiser and Mr. Taylor."

After finding that the sum of $69,514.68 was due, together with interest from December 31, 1967, the court specifically found that it was not true that the letter of instructions was tantamount to an equitable mortgage requiring that the debt be foreclosed pursuant to Code of Civil Procedure section 726. It is to this finding that appellant objects.

Civil Code section 2922 states that "[a] mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property."

█ Despite the formalities required by section 2922, it is settled that " '[e]very express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property,

real or personal, or fund, therein described or identified, a security for a debt or other obligation . . . creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his . . . purchasers or encumbrancers with notice.' (4 Pomeroy, Equity Jurisprudence (5th ed. Symons) § 1235.) Thus, a promise to give a mortgage or a trust deed on particular property as security for a debt will be specifically enforced by granting an equitable mortgage. [Citations.] ■ An agreement that particular property is security for a debt also gives rise to an equitable mortgage even though it does not constitute a legal mortgage. [Citations.] If a mortgage or trust deed is defectively executed, for example, an equitable mortgage will be recognized. [Citations.] Specific mention of a security interest is unnecessary if it otherwise appears that the parties intended to create such an interest. [Citations.]" (*Coast Bank* v. *Minderhout*, 61 Cal.2d 311, 313-314 [38 Cal.Rptr. 505, 392 P.2d 265].)

■ The California Supreme Court in *Coast Bank, supra,* determined that an agreement not to convey real property until all indebtedness had been paid created a security interest in that property and allowed the creditor to foreclose on this interest. *Coast Bank* made it clear that the controlling factual question is whether or not the parties intended to make the property security for the indebtedness. The intent need not show on the face of the instrument, although the instrument must be reasonably susceptible of interpretation as a mortgage. (*Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 16 [92 Cal.Rptr. 704, 480 P.2d 320].)

In the later case of *Tahoe National Bank, supra,* an instrument similar in many respects to that in *Coast Bank* was held not to be susceptible to interpretation as a mortgage. Of significance to the court was the relationship of the parties. The creditor bank in *Tahoe* chose the type of transaction and the formalities with full knowledge of the means of creating a legal mortgage had that been the intent of the parties.

The court in *Tahoe,* in holding that the transaction was not a mortgage, said: "[W]e are not dealing with homemade security instruments in which the parties labor to produce a mortgage but fall short of the legal requirements and must be rescued by a court of equity. The form used was carefully drafted to produce a security interest with incidents differing from that of a mortgage." (P. 18.) The court in *Tahoe* pointed to the language of the assignment which defined the extent of the protection afforded the lender which in main was to insure that the borrower continue to retain unencumbered assets rather than to create a lien on any of those assets.

■ In the case at hand, we have a private creditor and debtor relationship as distinguished from the experienced lending institution and its

borrower. *Coast Bank* has made it clear that an equitable mortgage may be created by a document restricting the owner's right to convey or encumber his real property if that is the intention of the parties. There can be no dispute here that the letter of instructions more fully restricted the appellant's right to transfer or convey the property than the instruments under consideration in either *Coast Bank* or *Tahoe* where the instruments were agreements which obviously could be breached by the debtor. The fact that, in the case at hand, the property was held subject to a holding agreement by which only the title company could pass title made the letter of instructions to the title company tantamount to a recorded lien as far as the title company and future grantees were concerned. The letter of instructions is reasonably susceptible of interpretation as an equitable mortgage. The question thus becomes one of whether there was sufficient evidence to support the implied finding that the parties did not intend to create an equitable mortgage.

The evidence from the creditor, here, was that he negotiated for a secured note; that he would have preferred the security of a deed of trust; that the letter of instructions and the note were "the Taylor package"; that its own records list the holding agreement under the heading "collateral" referring to the specific indebtedness.

It is clear that the parties intended this to be a secured transaction and that evidence did not support the finding that there was no equitable mortgage.

 Having concluded that the parties intended a secured transaction and that an equitable mortgage was created, it follows that respondent must follow the procedure specified in Code of Civil Procedure section 726; that is, foreclose on that security. This section provides that "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter. . . ." (See *Real Property and Real Property Security: The Well-Being of the Law* by John R. Hetland, 53 Cal.L.Rev., p. 151.)

 Respondent contends that he could elect his remedy and either sue first to establish an equitable lien and to foreclose it or sue on the underlying obligation. The cases cited by respondent to support this contention, however, are cases in which the court found on sufficient evidence that the note was not secured by a mortgage on real property, but that at most there was a promise to execute a mortgage to secure the debt. In such a situation, the creditor is not first required to establish the equitable lien. (*Kogan* v. *Bergman,* 244 Cal.App.2d 613, 621-622 [53 Cal.Rptr. 371]; *Fellom* v. *Adams,* 274 Cal.App.2d 855 [79 Cal.Rptr.

633]; *Blakeley* v. *Bryson,* 43 Cal.App. 735 [185 P. 685]; *Dyer Law etc. Co.* v. *Abbott,* 52 Cal.App. 545 [199 P. 340].) None of these cases could be controlled by *Coast Bank's* holding that a restriction on the power to convey or encumber real property is a security interest in the property provided there is the requisite intent.

If there is in fact an equitable mortgage, the choice of which remedy to pursue is not open to the creditor. The cases cited by respondent do not hold otherwise. ■ It is true that the debtor may waive the rule by not affirmatively pleading Code of Civil Procedure section 726 as a bar to an action on the underlying obligation. Then the one action rule will operate to bar the creditor from bringing a second action to foreclose the mortgage (*Roseleaf Corp.* v. *Chierighino,* 59 Cal.2d 35, 38 [27 Cal.Rptr. 873, 378 P.2d 97]; *James* v. *P.C.S. Ginning Co.,* 276 Cal.App.2d 19, 22 [80 Cal.Rptr. 457]), but he may proceed as he started and sue on the debt. The election, however, is only with the borrower who may raise the defense of section 726 or waive the defense by failing to raise it. (See *Salter* v. *Ulrich,* 22 Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344].)

■ Code of Civil Procedure section 726 is clear in its requirement that there can be but one form of action on a debt secured by a mortgage. The Legislature has also made it clear that the mortgagor may not avoid the limitation by exacting a waiver by the borrower. (Civ. Code, § 2953.) To allow a creditor to avoid the limitation by a device which gives the creditor the advantage of a legal mortgage would seem to be clearly contrary to the legislative intent expressed in the above code sections.

■ Respondent attempted throughout the trial to introduce testimony that appellants did not have an interest in the property subject to the holding agreement. ■ If this were the case or if the security had become valueless, the respondent would not be required by section 726 to foreclose. (*Fellom* v. *Adams, supra,* 274 Cal.App.2d 855; *Dyer Law etc. Co.* v. *Abbott, supra,* 52 Cal.App. 545.) ■ The respondent sought to offer evidence of another action purporting to decide this question. The trial court, however, refused to allow such evidence since the case in question had not been reduced to judgment. It may be that on a subsequent action the respondent will be able to show that the appellants did not have an interest in the property or that the security had been exhausted. This cannot be determined on the record before this court.

The judgment is therefore reversed.

Draper, P. J., and Caldecott, J., concurred.

A petition for a rehearing was denied June 2, 1971, and respondent's petition for a hearing by the Supreme Court was denied June 30, 1971.