FILED

**NOT FOR PUBLICATION**

JUL 06 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   EC-15-1312-TaJuD |
| SHAVER LAKEWOODS DEVELOPMENT INC., | Bk. No.   1:11-bk-62509 |
| Debtor. | Adv. No.   1:14-ap-1076 |
| VERLYN GAINES, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| RANDELL PARKER, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on June 23, 2016
at Sacramento, California

Filed – July 6, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Fredrick E. Clement, Bankruptcy Judge, Presiding

---

Appearances:     Robert H. Brumfield, III of Brumfield & Hagan, LLP argued for Appellant; Lisa Anne Holder of Klein Denatale Goldner Cooper Rosenlieb & Kimball, LLP argued for Appellee.

---

Before:   TAYLOR, JURY, and DUNN, Bankruptcy Judges.

---

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

Appellant Verlyn Gaines appeals from a judgment determining that he did not hold a secured lien against real property owned by debtor Shaver Lakewoods Development, Inc. and subsequently sold by the chapter 7[1] trustee.

We AFFIRM the bankruptcy court.

**FACTS**

Prepetition, Gaines provided lines of credit and other financing to the Debtor in connection with the development of a planned community in Shaver Lake, California. Although there were no formal agreements in place, the parties generally agreed that Gaines would be repaid from the proceeds of lots when developed and sold. The Debtor subsequently sold or transferred several of the lots clandestinely; Gaines received none of the proceeds.

After Gaines' discovery of these transfers, the parties addressed his obvious concern through an "Assignment of Proceeds," followed by an amendment thereto (jointly, the "Assignment"). Under the Assignment, the Debtor granted to Gaines right, title, and interest in partial net sale proceeds of 13 lots (collectively, the "Property"); specifically, Gaines was to receive $35,000 from each of the first six lot sales and $70,000 from each of the next seven lot sales, until Gaines received payment in full of all amounts owed on account of the loans and payment of a substantial finders fee.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

The use of the Assignment, as opposed to a trust deed, to collateralize the Debtor's obligations to Gaines was a considered choice. The Property was subject to an existing deed of trust, and it contained a due on encumbrance acceleration clause; the first position lender was entitled to require immediate payment of the entire amount due on its note if the Debtor allowed recordation of a junior lien on the Property. And there was no question that the first position lender took its acceleration rights seriously; it specifically warned the parties that it would accelerate if Gaines recorded a trust deed.

When executed, the Assignment included an attachment describing the Property by legal description. After execution, Gaines recorded the Assignment with the Fresno County recorder. He failed, however, to perfect any personal property security interest provided by the Assignment through a California secretary of state filing.

The Debtor sold nine homes prepetition and paid Gaines as provided by the Assignment.[2] The Trustee sold the remaining homes after the Debtor filed its chapter 7 case.[3] Gaines asserted a secured claim in the bankruptcy case in the amount of $280,000, based on the Assignment, and claimed entitlement to

---

[2] Indeed, Gaines signed partial releases with the title company to obtain the funds.

[3] Instead of selling the remaining lots, the Debtor transferred them to insiders and then filed for bankruptcy. Once in bankruptcy, the Trustee recovered the transferred lots pursuant to § 550 and obtained authorization to sell the lots free and clear of the insiders' liens.

3

the postpetition lot sale proceeds.  The Trustee thereafter commenced an adversary proceeding against Gaines to determine his entitlement, if any, to the proceeds of the postpetition sales.

In his adversary complaint, the Trustee asserted that Gaines did not have a lien against the sale proceeds enforceable against the Trustee pursuant to §§ 544(a)(1)-(3) and 552 and that the Assignment was not a lien against the Property; that the Debtor's obligations to Gaines were barred by the California statute of limitations as of the petition date; that the finders fee was barred as a matter of law under California law because Gaines was not a licensed broker; and that any debt owed to Gaines was not secured by the sale proceeds of the Property.

Gaines sought declaratory relief by counterclaim; he claimed a security interest in all sale proceeds of the Property pursuant to the Assignment and asserted clear title to the lots could not pass until he was paid.  Gaines based his assertion of a secured claim exclusively on an alleged lien encumbering the Property itself; he expressly disclaimed any lien on personal property.  And he took this position consistently throughout the bankruptcy case and now on appeal.

The bankruptcy court bifurcated the trial and first determined whether the Assignment created a lien against the Property securing Gaines' claim.  After trial, it decided the issue in favor of the Trustee.  It found that the Assignment did not describe the Property particularly as collateral or reflect an intent to encumber it; instead, the Assignment provided a security interest in the personal property proceeds from sale of

4

the Property. The bankruptcy court noted that Gaines expressly disclaimed a lien against personal property. And the bankruptcy court reached the obvious conclusion that Gaines failed to perfect any personal property security interest, and, thus, any personal property security interest was subject to set aside under § 544.

Following entry of judgment in favor of the Trustee, Gaines timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (K). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in determining that the Assignment did not create a lien against the Property and, thus, that Gaines' claim was not secured by the Property.

## STANDARDS OF REVIEW

We review the bankruptcy court's legal conclusions de novo. See Los Angeles Cnty. Treasurer & Tax Collector v. Mainline Equip., Inc. (In re Mainline Equip., Inc.), 539 B.R. 165, 167 (9th Cir. BAP 2015). Interpretation of the Assignment is governed by California law. Under California law, we review issues of contract interpretation de novo. See Speirs v. Bluefire Ethanol Fuels, Inc., 243 Cal. App. 4th 969, 984 (2015).

We may affirm the decision of the bankruptcy court on any basis supported by the record. See Hooks v. Kitsap Tenant Support Servs., Inc., 816 F.3d 550, 554 (9th Cir. 2016).

///

**DISCUSSION**

Gaines concisely advances three arguments on appeal: first, that the Assignment gave rise to a mortgage under California law and, thus, created a lien in his favor against the Property. Second, that, in the alternative, an equitable mortgage existed under California law, resulting in a lien against the Property. And, third, that the Trustee was not a bona fide purchaser because the Assignment was recorded.

The bankruptcy court determined that the Assignment did not give rise to a mortgage against the Property. We agree.

In California, a mortgage is "a contract by which specific property . . . is hypothecated for the performance of an act, without the necessity of a change of possession." Cal. Civ. Code § 2920(a). Here, a plain reading of the Assignment fails to establish that the debt owed to Gaines would be secured by the Property. Save for one immaterial reference,[4] there is absolutely no reference to security, collateral, pledge, lien, or hypothecation of the Property itself.

This is not surprising; Gaines acknowledged that the parties deliberately refrained from executing a traditional deed of trust because of the first position lender's warning that a junior trust deed would trigger the acceleration clause in the senior trust deed. While a particular form is not required to create a mortgage, it is axiomatic that the real property hypothecated in the document must be clearly identified as

---

[4] Section 6 provides that "[t]he title to the Assigned Proceeds has in no way been previously transferred in whole or in part for the purpose of sale or **security**." (Emphasis added).

6

providing security for the subject debt.

Gaines argues that the Assignment clearly describes the Property through the attachment containing a legal description of the Property. But the Assignment's only reference to this attachment is the following: "[The Debtor] owns and is developing that certain real property known as Shaver Lake Woods Development, (the 'Development'). The remaining unsold lots are legally described in Exhibit 'A' attached hereto and incorporated herein by reference as if fully set forth at length[.]" This description may describe the Property, but it does not delineate the collateral provided by the Assignment, and, in isolation or in concert with the Assignment's clear language, it falls short of a hypothecation of the Property itself.

Instead, the Assignment reflects that Gaines obtained only a security interest in the sale proceeds of the Property. This is an interest in personal property, but Gaines expressly disclaimed any such security interest both before the bankruptcy court and on appeal. As a result, we need not and do not consider his rights, if any, to a personal property secured claim.

Gaines next argues, in the alternative, that the Assignment created an equitable mortgage against the Property. In California:

> [E]very express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make . . . property . . . a security for a debt or other obligation . . . creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his . . .

7

purchasers or encumbrancers with notice. Clayton Dev. Co. v. Falvey, 206 Cal. App. 3d 438, 443 (1988).[5] "[A] promise to give a mortgage or a trust deed on . . . property as security for a debt will be specifically enforced by granting an equitable mortgage." Id. at 443. In other words, "[a]n agreement that . . . property is security for a debt also gives rise to an equitable mortgage even though it does not constitute a legal mortgage." Id. at 443-44. And, importantly, "[s]pecific mention of a security interest is unnecessary if it otherwise appears that the parties intended to create such an interest." Id.

Here, the parties were aware of the first position lender's intent to invoke the acceleration clause if a junior lien was recorded against the Property. They crafted the Assignment to circumvent this problem and by its plain language agreed not to create a mortgage or a security interest in real property. This was not an instance of mistake or defect. A litigant that seeks equity must do equity. Gaines cannot now seek an equitable mortgage, when the Assignment is inconsistent with his claim of a lien on real property and when the mortgage he now seeks would have constituted a knowing impingement on the contractual rights of a third party.

---

[5] See also 5 Miller and Starr, Cal. Real Est. § 13:31 (4th ed.) ("An 'equitable mortgage' is one that is created by a court of equity rather than by the formal act of the parties. Under certain circumstances, the court determines that equity, fairness, and justice warrant enforcement of a security interest between the parties despite the fact that no formal mortgage was created or that an attempted creation was defective.").

8

Given that the Assignment did not supply Gaines with a lien against the Property and Gaines' affirmative abandonment of any personal property secured claim, the bankruptcy court correctly concluded that Gaines' claim was unsecured. Thus, we need not and do not examine the issue of whether the Trustee was a bona fide purchaser for the purposes of lien avoidance.

**CONCLUSION**

Based on the foregoing, we AFFIRM.